UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN GAVRILOVIC,

      Plaintiff,                                      Case No. 21-12709
                                                            District Judge Nancy G. Edmunds
v.                                                          Magistrate Judge Jonathan J.C. Grey

T-MOBILE USA, INC.,

      Defendant.

_____

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS THE CASE, OR IN THE ALTERNATIVE, TO STAY ALL PROCEEDINGS**

Jonathan Gavrilovic brings a complaint against T-Mobile USA, Inc., alleging violations of the Federal Communications Act and asserting negligence, negligent hiring, retention, training and supervision, and gross negligence claims. (ECF No. 1.) On January 21, 2022, Gavrilovic moved to compel arbitration and dismiss the case, or in the alternative, to stay all proceedings until completion of arbitration. (ECF No. 15.) Gavrilovic responded (ECF No. 17), and T-Mobile replied (ECF No. 20). The Court heard oral argument on March 8, 2022. (ECF No. 19.)

For the following reasons, the Court **RECOMMENDS** that T-Mobile's motion to compel arbitration and dismiss the case without prejudice be **GRANTED**.

## I.   Background

On July 24, 2012, Gavrilovic signed a contract for cellular phone service with Sprint Corporation. (ECF No. 17-2, PAGEID.214.) On that date, Sprint's September 2011 terms and conditions were in effect. (ECF No. 15-1, PAGEID.90.) On March 31, 2018, Gavrilovic leased an Apple iPhone X from Sprint and entered into a flex lease agreement and service agreement with Sprint. (*Id.* at PAGEID.90–91.) On that date, Sprint's September 2017 terms and conditions were in effect. (*Id.* at PAGEID.91.) The flex lease agreement contained a mandatory arbitration provision that also waived class actions:

> If you are a consumer, and if a dispute is not resolved through the Dispute Resolution process outlined in Sprint's Consumer Terms or through communications with Customer Care, you agree that, instead of suing in court, all disputes must be resolved through an individual arbitration or small claims court. You agree that, by entering into this Lease Agreement, YOU WAIVE THE RIGHT TO A TRIAL BY JURY AND YOU MAY BRING CLAIMS ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A CLASS MEMBER IN ANY PUTATIVE CLASS OR REPRESENTATIVE PROCEEDING. Further, the details of the process, terms and effect of the dispute resolution, arbitration, and waiver of class action provisions set forth in the Consumer Terms are incorporated into this Lease Agreement, and you are

subject to them. This agreement to arbitrate is intended to be broadly interpreted.

(ECF No. 15-1, PAGEID.115. (emphasis in original)) The service agreement contained a similar arbitration provision. (ECF No. 15-1, PAGEID.121.)

In April 2020, Sprint merged with T-Mobile's parent company. (ECF No. 15, PAGEID.69.) T-Mobile assumed Gavrilovic's contract with Sprint, which made Gavrilovic a T-Mobile customer. (ECF No. 17, PAGEID.200.) On March 1, 2021, T-Mobile updated its terms and conditions ("March 2021 Terms and Conditions") with the following language:

> You accept these T&Cs by doing any of the following things:
>
> - giving us a written or electronic signature or confirmation, or telling us orally
> - that you accept;
> - activating, using or paying for the Service or a Device; or
> - opening the Device box.
>
> If you don't want to accept these T&Cs, don't do any of these things.

(ECF No. 15-1, PAGEID.147.) T-Mobile's updated terms and conditions also contained an arbitration clause, which allowed a right to reject arbitration:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit. For additional terms and conditions governing a dispute between us,

3

> including how to dispute Charges assessed to you on your bill, choice of law, disclaimers of certain warranties, limitations of liabilities, and your indemnification obligations, see "Other Terms Regarding Dispute Resolution" below

(ECF No. 15-1, PAGEID.148–149.) Gavrilovic used his phone on the T-Mobile network. (ECF No. 1; ECF No. 17-2.)

Gavrilovic decided to always send his phone bills to his parents' home address. (ECF No. 17-2, PAGEID.215.) Additionally, Gavrilovic's mother always paid those bills. *Id.* Both Sprint's and T-Mobile's monthly bills reminded Gavrilovic of the applicable terms and conditions. (ECF No. 15-1, PAGEID.92.) In March 2021, T-Mobile specifically flagged the March 2021 updates to its terms and conditions. *Id.*

In November 2021, a T-Mobile employee allegedly swapped Gavrilovic's subscriber identification module card number to that of another customer, which allowed the individual to enter Gavrilovic's account that contained approximately $1.16 million in cryptocurrencies. (ECF No. 1.) On November 19, 2021, Gavrilovic filed a complaint against T-Mobile. *Id.*

In its motion to compel arbitration, T-Mobile argues that Gavrilovic must arbitrate his claims because Gavrilovic repeatedly agreed to arbitration and never exercised his right to opt out. (ECF No. 15.) Gavrilovic contends that (1) he had no notice of arbitration after the T-Mobile and Sprint merger because he never saw his phone bills; (2) his contractual relationship with T-

4

Mobile is invalid because he received no consideration for T-Mobile's adoption of the March 2021 Terms and Conditions; (3) the arbitration provision is unenforceable because its class action waiver waived his substantive rights; (4) the arbitration provision is unenforceable for being procedurally and substantively unconscionable. (ECF No. 17.)

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides that commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The party seeking to enforce an arbitration agreement may request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. *Id*. § 2.

In assessing a motion to compel arbitration, a court must make four determinations. *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003). Specifically, a court must determine: (1) whether the parties agreed to arbitration; (2) the scope of that agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) whether to stay the remainder of the proceedings pending arbitration if it concludes that some, but not all, of the claims in the

action are subject to arbitration. *Id.*; *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citations omitted).

Moreover, courts examine "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007).

### III.  Analysis

**A. Four Factors**

Upon consideration of the four factors, the Court finds that arbitration of Gavrilovic's claims should be compelled.

First, the parties disagree as to whether they agreed to arbitrate. For the reasons discussed in below, the Court concludes that T-Mobile's March 2021 arbitration clause is valid. Given the validity of the arbitration clause, the parties agreed to arbitrate. *Fazio*, 340 F.3d 386 at 392.

Second, with respect to the arbitration agreement's scope, the arbitration clause expressly provides for arbitration of "any and all claims or disputes in any way related to or concerning the agreement, our privacy notice, our services, devices or products, including any billing disputes, will be resolved by binding arbitration or in small claims court." (ECF No. 15-1, PAGEID.149.) The clause further states that "'Dispute' shall have the

6

broadest meaning possible, and includes contract claims, and claims based on tort violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." *Id.* Accordingly, the arbitration clause encompasses all the claims included in Gavrilovic's complaint. *Fazio*, 340 F.3d 386 at 392.

Third, with respect to Congress' intent, nothing suggests that Congress intended to exempt Federal Communications Act and negligence claims from arbitration. Further, the party opposing arbitration bears the burden "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Gavrilovic did not cite any case holding that class action waivers are prohibited under the Federal Communications Act. In the absence of legal support for his argument regarding class waivers, the Court finds that it lacks merit. The Court accordingly concludes that Congress did not intend to preclude arbitration of Gavrilovic's claims.

Fourth, with respect to the determination of which claims are subject to arbitration, all of Gavrilovic's claims are subject to arbitration. The Court further concludes that T-Mobile is entitled to dismissal rather than a stay of this litigation. When claims are referred to arbitration, the FAA provides for

7

a stay of court proceedings until arbitration takes place. 9 U.S.C. § 3. However, when all claims are subject to arbitration, courts may dismiss the complaint. *Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999) (upholding dismissal of "litigation in which all claims are referred to arbitration"); *see also Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (rejecting the argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them). Further, district courts in the Sixth Circuit generally enforce arbitration agreements by ordering dismissal without prejudice. *Shammami v. Broad St. Sec., Inc.*, 544 F. Supp. 2d 585, 588 n.6 (E.D. Mich. 2008) (citations omitted). Here, all of Gavrilovic's claims are subject to arbitration. The Court thus recommends dismissal without prejudice.

### B. Agreement to Arbitrate

The Court must decide the validity of T-Mobile's March 2021 Terms and Conditions, including the arbitration provision. If the Court finds that those terms bind Gavrilovic, arbitration must occur.

### 1. Notice of Arbitration

Gavrilovic argues that he did not have notice of the arbitration clause. This argument is not persuasive. Under Michigan law, "a party's assent to the terms of a contract may be manifested by his written and oral statements,

as well as his conduct." *Pearson & Son Excavating Co. v. W. Recreational Vehicles, Inc.*, No. 03-cv-40246, 2005 WL 8156057, at *6 (E.D. Mich. Dec. 28, 2005), *report and recommendation adopted*, No. 03-40246, 2006 WL 901724 (E.D. Mich. Mar. 31, 2006). Here, the Court relies on T-Mobile's March 2021 Terms and Conditions, which were in effect at the time of the events alleged in Gavrilovic's complaint. T-Mobile's March 2021 Terms and Conditions stated that customers accept the terms, including arbitration, by "using or paying for the Service." (ECF No. 15-1, PAGEID.147.) "Service" is defined as "T-Mobile services provided to you." *Id.*

      Gavrilovic did not sign a contract with T-Mobile, but he accepted T-Mobile's March 2021 Terms and Conditions—which contained an arbitration provision—through his conduct. First, Gavrilovic used T-Mobile's service by using his phone. (ECF No. 1; ECF No. 17-2.) Gavrilovic does not contend that he failed to notice that T-Mobile acquired his cell phone service from Sprint. Second, Gavrilovic used T-Mobile's service by paying for T-Mobile's service. (ECF No. 17-2, PAGEID.214.) Gavrilovic became and remained a T-Mobile accountholder, and payments were made to T-Mobile on his behalf. (ECF No. 17, PAGEID. 193.) Gavrilovic asserts that he never saw a billing statement which flagged the March 2021 Terms and Conditions and that his mother paid his phone bills.

9

(ECF No. 17-2, PAGEID.215.) However, under Michigan law, "mere failure to read an agreement is not a defense in an action to enforce the terms of a written agreement." *Watts v. Polaczyk*, 242 Mich. App. 600, 604 (Mich. Ct. App. 2000) (citation omitted).

Moreover, Gavrilovic concedes that monthly phone bills were received at the address where he chose to send the bills. (ECF No. 17-2, PAGEID.215.) The March 2021 Terms and Conditions gave unambiguous notice that they contained an arbitration provision. The first paragraph of the March 2021 Terms and Conditions stated: "Please read these Terms & Conditions ("T&Cs"), which contain important information about your relationship with T-Mobile, including mandatory arbitration of disputes between us, instead of class actions or jury trials." (ECF No. 15-1, PAGEID.146.) The arbitration provision itself appears a few pages later in bold and capital letters. (*Id.* at PAGEID.149.)

The Court thus rejects Gavrilovic's argument that the March 2021 Terms and Conditions are invalid because he never saw or read them. Gavrilovic had notice of the arbitration provision and accepted its terms by having payments made on his behalf and using his phone, even after his service switched from Sprint to T-Mobile.

### 2. Consideration in the Contractual Agreement

Gavrilovic asserts that he received no consideration for T-Mobile's adoption of the March 2021 Terms and Conditions. (ECF No. 17.) The Court finds that Gavrilovic received consideration.

In *In re StockX Customer Data Sec. Breach Litig.*, the Sixth Circuit considered whether to enforce an agreement in which the defendant notified the plaintiffs of updates to the terms and conditions. 19 F.4th 873, 881–82 (6th Cir. 2021). The court enforced the updated term of conditions and found that contracting parties remained free to modify their agreements. *Id.* Additionally, courts generally do not inquire into the sufficiency of consideration. *Gen. Motors Corp. v. Dep't of Treasury, Revenue Div.*, N.W.2d 734, 738 (Mich. 2002) (citations omitted) ("It has been said '[a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration.'"). But Gavrilovic received consideration. Gavrilovic received continued service in consideration for the adoption of updated terms and conditions. His direction of continued payments also supports the finding of consideration.

### 3. Waiver of Substantive Rights

The class waiver, which contains an opt-out provision, did not waive Gavrilovic's substantive rights. Under Michigan law, an arbitration

agreement is unenforceable if it "is drafted in a way that effectively waives the plaintiff's substantive rights or remedies or so structures the procedures as to make it impossible for the plaintiff to 'effectively vindicate his statutory cause of action'." *Rembert v. Ryan's Family Steakhouses, Inc.*, 596 N.W.2d 208, 225 (Mich. Ct. App. 1999). Specifically, if the amount in dispute is so small that asserting a claim becomes impracticable, the right to bring a class action is more akin to a substantive right than a procedural one. *Adler v. Dell, Inc.*, No. 08-CV-13170, 2008 WL 5351042, at *7 (E.D. Mich. Dec. 18, 2008) (citing *Wong v. T-Mobile USA, Inc.*, No. 05-73922, 2006 WL 2042512, at *5 (E.D. Mich. July 20, 2006)).

Gavrilovic estimates that his individual damages exceed $1.16 million (ECF No. 1), which is far greater than the $19.74 in estimated damages in *Wong* and $100 or less in estimated damages in *Adler*. *Wong*, 2006 WL 2042512, at *5; *Adler*, 2008 WL 5351042, at *7. Gavrilovic thus has not shown that without class certification, he would be effectively prohibited from pursuing his claim.

### 4. Unconscionability

The Court finds that the March 2021 Terms and Conditions are not unconscionable. For a contract to be found unconscionable, both procedural and substantive unconscionability must be present. *Clark v. DaimlerChrysler*

*Corp.*, 706 N.W.2d 471, 474 (2005). Procedural unconscionability "exists where the weaker party had no realistic alternative to acceptance of the term." *Id.* (citation omitted). Substantive unconscionability "exists where the challenged term is not substantively reasonable." *Id.* (citation omitted).

Here, the arbitration provision, which included a 30-day opt-out period, is not procedurally unconscionable. No procedural unconscionability exists if the weaker party remains free to accept or reject the contract's terms. *Flint v. Bank of Am., N.A.*, No. 15-13006, 2016 WL 1444505, at *1 (E.D. Mich. Apr. 13, 2016) (citation omitted).

First, Gavrilovic had the option to select other wireless service providers. The Sixth Circuit has stated that when a party has an "alternative source with which it could contract," a contract cannot be procedurally unreasonable. *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 974 (6th Cir. 2009). As Gavrilovic mentions in his brief, there are numerous wireless service providers, including but not limited to AT&T, Verizon, and U.S. Cellular. (ECF No. 17, PAGEID.206.)

Additionally, T-Mobile's March 2021 Terms and Conditions included instructions in bold, capitalized typeface on how to opt out of arbitration. (ECF No. 15-1, PAGEID.149.) Gavrilovic had the opportunity to opt out of binding arbitration, and the March 2021 Terms and Conditions

13

communicated this opportunity to him. In *Zawada v. Uber Techs., Inc.*, the Sixth Circuit affirmed a district court's decision that found that an opt-out arbitration clause precluded procedural unconscionability. 727 F. App'x 839. 839–40 (6th Cir. 2018). Because Gavrilovic did not opt out, the March 2021 Terms and Conditions are not procedurally unconscionable.

The arbitration is also not substantively unconscionable. Gavrilovic first argues that the discovery process in arbitration is too limited in comparison to federal proceedings. Per the March 2021 arbitration provision, the American Arbitration Association's consumer arbitration rules in effect at the time arbitration commences apply to all disputes. (ECF No. 15-1, PAGEID.150.) Rule 22 of those rules govern the exchange of information between parties during arbitration:

> (a) If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct
>
>> 1) specific documents and other information to be shared between the consumer and business, and
>> 2) that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.
>
> (b) Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.
>
> (c) No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless

>an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.
>
>(d) The arbitrator has authority to resolve any disputes between the parties about exchanging information.

Consumer Arbitration Rules, *American Arbitration Association*, https://www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf (effective Sept. 1, 2014). These rules depart from the Federal Rules of Civil Procedure in at least one instance by not explicitly providing for depositions. Discovery limitations, however, are common in arbitration and do not necessarily render an arbitration provision unconscionable. *Southerland v. Corp. Transit of Am.*, No. 13-14462, 2014 WL 4906891, at *8 (E.D. Mich. Sept. 30, 2014).

Gavrilovic next argues that the arbitration provision is substantively unconscionable for limiting attorney's fees and barring class remedies. (ECF No. 17.) Gavrilovic cannot establish substantive unconscionability. Substantive unconscionability requires proof that the "inequity of the term is so extreme as to shock the conscience. *Clark v. Daimler-Chrysler Corp.*, 268 Mich. App. 138, 144, 706 N.W.2d 471 (2005). For example, a federal court found that a contract shocked the conscience when the contract mandated that a financially destitute customer travel to a remote location to arbitrate claims brought by a sophisticated party. *Vegter v. Forecast Financial*

*Corporation*, No. 1:07-CV-279, 2007 WL 4178947, *4 (W.D. Mich. Nov. 20, 2007). No similarly shocking provision exists here.

First, Gavrilovic misstates T-Mobile's terms and thus has not shown that he will be unable to recover attorney's fees. The March 2021 Terms and Conditions expressly provide for the award of attorney's fees: "An arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief and attorneys' fees." (ECF No. 15-1, PAGEID.151.)

Second, Gavrilovic's waiver of the right to participate in a class action likewise does not shock the conscience. *Francis v. AT&T Mobility LLC*, No. 07-CV-14921, 2009 WL 416063, at *10 (E.D. Mich. Feb. 18, 2009). The Supreme Court has enforced class action waivers in arbitration agreements governed by the Federal Arbitration Act. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (finding that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration"). In *American Express Co. v. Italian Colors Restaurant*, the Supreme Court similarly stated that, with respect to a contract with a class action waiver, "courts must 'rigorously enforce' arbitration agreements according to their terms . . . unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *American Express Co. v. Italian*

16

*Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013); *see also Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 600 (6th Cir. 2013) (stating that a class action right does not render an arbitration agreement unenforceable). A review of the record and the law illustrates that the Federal Arbitration Act's mandate continues, with no override present.

    The arbitration provision does not shock the conscience. Both parties agreed to arbitrate any disputes concerning T-Mobile's services. Gavrilovic did not opt out of the arbitration provision. That the arbitration provision requires disputes to be administered by the American Arbitration Association, an established dispute resolution provider, does not shock the conscience. *See generally* Chul-Gyoo Park, *A Comparative Analysis of Arbitral Institutions and Their Achievements in the United States and Korea*, 15 Am. Rev. Int'l Arb. 475, 475 (2004) (noting that the American Arbitration Association is a well-known provider of dispute resolution services throughout the United States). Finally, T-Mobile's arbitration provision, when compared to the substantive unconscionability of requiring a destitute individual to travel far for arbitration in *Vegter*, also does not shock the conscience. 2007 WL 4178947, *4.

The Court therefore finds, having reviewed the March 2021 Terms and Conditions, neither procedural nor substantive unconscionability exists in the arbitration provisions contained in the terms and conditions.

### IV. Conclusion

For the reasons set forth above, the Court **RECOMMENDS** that T-Mobile's motion to compel arbitration and dismiss the case without prejudice be **GRANTED**.

Dated:   March 25, 2022                    s/**Jonathan J.C. Grey**
                                           Jonathan J.C. Grey
                                           United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.